Filed 1/23/15  P. v. Meeks CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>HENRY EARL MEEKS,<br><br>        Defendant and Appellant. | B254317<br><br>(Los Angeles County<br>Super. Ct. No. BA409911) |

---

APPEAL from a judgment of the Superior Court of Los Angeles County, Charlaine F. Olmedo, Judge.  Affirmed.

Joshua H. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Attorney General, Johnathan J. Kline and Jonathan M. Krauss, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Defendant pleaded no contest to two counts of residential burglary arising out of two separate incidents. Police stopped defendant after they observed him crouched near his car, which was parked next to a large shipping container at a gas station. The officers believed defendant was either fastening or unfastening the license plate on the vehicle. A search of the car, conducted after officers had ascertained defendant was on probation, yielded evidence connecting defendant to a recent residential burglary. Defendant moved to exclude evidence obtained in the search, but the trial court denied his motion, finding the officers properly searched the vehicle after they learned of his probation search condition. We affirm.

## BACKGROUND

On December 12, 2013, defendant was charged in an amended information with two counts of residential burglary, one count of attempted burglary of an inhabited vessel, and four counts of receiving stolen property. Count 1 was based on the April 4, 2013 burglary of the residence of Shelly Marshall, and count 2 was based on the September 5, 2013 burglary of the residence of Susan Geddes. On February 5, 2014, defendant pleaded no contest to counts 1 and 2 and the court dismissed the remaining counts.

On December 19, 2013, defendant filed a motion to suppress evidence obtained in connection with the stop of defendant at the gas station, during which police officers searched defendant's car and found evidence of tools and contraband connected with the burglary of Susan Geddes's home. Defendant argued that the officers could not articulate facts justifying the detention, which was unlawfully prolonged.

The trial court conducted a hearing at which it took testimony regarding the stop of defendant. Officer Paul Quintana of the Los Angeles Police Department was working with Officer Peters on September 5, 2013, on patrol in the Wilshire Division near the area of Washington and Crenshaw because of high narcotic activity in the area. Around noon, at a Mobil Gas station at the corner of Crenshaw and Washington, Officer Quintana observed defendant crouched in front of a vehicle "possibly removing or installing plates on a vehicle." The car was not parked next to a gas pump, nor was it parked in a parking

2

space, leading officers to believe defendant was attempting to conceal the car. The officers decided to perform a pedestrian stop, and approached defendant. When defendant saw the officers, he attempted to get into the driver's side of the car. The officers told him to stop, defendant approached the vehicle again, and the officers put handcuffs on him. The officers did a patdown search for weapons on defendant's person and found a long screwdriver that they believed defendant was using to remove the license plate from the vehicle. The officers found the front license plate lying on the ground in front of the car.

The officers performed a warrant and want check on their computer, and found defendant was on probation. Defendant confirmed that he was on probation for weapons charges. The officers called defendant's probation officer to confirm that a condition of defendant's probation was search and seizure. After speaking to defendant's probation officer, the officers searched the car. In the trunk, they found an iPad and a computer. Officer Quintana turned on the computer and learned it belonged to Susan Geddes. They did not find any narcotics or open containers of alcohol.

Defendant argued that the officers lacked reasonable suspicion to approach a car that was being worked on at a gas station, one of the most normal and least suspicious activities to be performed at a gas station. Further, finding a screwdriver on defendant could not have added to any suspicion giving them a reasonable basis to detain him, and any suspicion about defendant had been dispelled before the officers learned he was on probation. The court observed that it was suspicious the front license plate had been removed from the car, and that the officers believed defendant had parked his car in a suspicious manner next to the shipping container.

The court denied the motion, finding that it did not "see this as anything other than good police work. The officers are driving. They see something that appears to be suspicious activity to them. [¶] I think it's reasonably suspicious, someone with a vehicle parked next to a shipping container removing or putting something on . . . . [¶] . . . [¶] There's no search of the vehicle until they actually not only talk to

3

the defendant and run the defendant but call probation, and they do a valid search at that point of the vehicle and find the stolen items in the trunk."

## DISCUSSION

Defendant contends that he was detained and his detention was unreasonable because it was not justified by a reasonable suspicion. As a result, the evidence obtained as a result of the officers' search must be excluded. Defendant requests that we reverse, remand the matter to the trial court with directions to grant his motion to suppress, vacate the guilty plea, and proceed with the case without the unlawfully seized evidence. We disagree and therefore affirm the judgment.

In reviewing the ruling on a motion to suppress, the appellate court defers to the trial court's factual findings, express or implied, when supported by substantial evidence. (*People v. James* (1977) 19 Cal.3d 99, 107.) "In ruling on a motion to suppress, the trial court finds the historical facts, selects the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. We review the court's resolution of the factual inquiry under the deferential substantial-evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. [Citation.]" (*People v. Saunders* (2006) 38 Cal.4th 1129, 1133–1134.) "'The power to judge credibility . . . , weigh evidence and draw factual inferences, is vested in the trial court.'" (*James*, at p. 107.) In determining whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. (*Brendlin*, at p. 1113; *People v. Ramos* (2004) 34 Cal.4th 494, 505–506.)

### 1. Detention

Not every interaction between the police and an individual is protected by the Fourth Amendment. Police contacts fall into "three broad categories . . . : consensual encounters that result in no restraint of liberty whatsoever; detentions, which are seizures of an individual that are strictly limited in duration, scope, and purpose; and formal arrests or comparable restraints on an individual's liberty." (*In re Manuel G.* (1997) 16

Cal.4th 805, 821.) "'[A] person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" "[T]here must also be an actual taking into custody, whether by the application of physical force or by submission to the assertion of authority. [Citation.]" (*People v. Brendlin* (2006) 38 Cal.4th 1107, 1115.) "A seizure occurs when the police, by the application of physical force or show of authority, seek to restrain the person's liberty [citations]; the police conduct communicates to a reasonable innocent person that the person was not free to decline the officer's request or otherwise terminate the encounter [citation]; and the person actually submitted to that authority [citation] for reasons not 'independent' of the official show of authority [citation]." (*Id.* at p. 1118.)

There is no reasonable dispute here that defendant was in fact detained. He was approached by officers who told him to step out of the car, and when he failed to do so, they handcuffed him.

2.      *Reasonableness of Detention*

Defendant argues his detention was unreasonable because the officers did not see any activity related to crime: they did not see defendant trying to break into the car, they did not see any drug-related activity, the conduct took place at noon at a gas station, and it is not unlawful to remove license plates from a vehicle. Further, neither the court nor Officer Quintana articulated the sort of criminal activity he believed defendant was committing. We disagree.

Under *Terry v. Ohio* (1968) 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889], a detention is reasonable under the Fourth Amendment when the police officer can point to specific articulable facts that under the totality of the circumstances provide some objective manifestation that the person detained may be involved in criminal activity. (*People v. Souza* (1994) 9 Cal.4th 224, 231.) Law enforcement may draw on their experience and specialized training to make inferences from and deductions about the cumulative information available to them that might elude an untrained person. (*United*

5

*States v. Arvizu* (2002) 534 U.S. 266, 273 [122 S.Ct. 744, 151 L.Ed.2d 740].) Police, however, may not rely on mere hunches. (*People v. Pitts* (2004) 117 Cal.App.4th 881, 889.)

Here, the officers testified that they observed defendant engaged in activity that looked suspicious given the context: defendant's car was parked in a manner that in the officers' view was meant to avoid detection; defendant was either fastening or unfastening a license plate; when officers approached, defendant attempted to get back in the vehicle, leaving the license plate on the ground; when officers instructed him to stop, defendant continued to attempt to get into his car. These circumstances provided the officers with a reasonable suspicion that defendant was engaged in criminal activity.

### 3. *Fruit of Unlawful Detention*

Defendant argues the fruit of the search must be excluded because officers discovered defendant was subject to a search condition only after conducting their unlawful detention. Defendant asserts there is conflicting authority on this point, with some cases holding that the officer must know of the defendant's probationary status when the officer acts (*People v. Bates* (2013) 222 Cal.App.4th 60), while other authority holds that any illegality in the initial traffic detention is attenuated by the probation search condition (*People v. Durant* (2012) 205 Cal.App.4th 57).

Police may search probationers and parolees without reasonable suspicion that the person has violated the law or possess evidence of a crime or contraband. (*People v. Bravo* (1987) 43 Cal.3d 600, 609–611.) When conducting the search, however, the officer must know that the person detained and searched is in fact a probationer. (*People v. Sanders* (2003) 31 Cal.4th 318, 335.)

All evidence obtained in violation of the Fourth Amendment is subject to exclusion, including not only direct or primary evidence but also derivative evidence subsequently obtained through information obtained by police through their unlawful conduct. (*People v. Mayfield* (1997) 14 Cal.4th 668, 760.) Several exceptions to this sanction exist on the rationale that deterrence of improper police conduct, the purpose of

6

the exclusionary rule, is outweighed by the cost of suppressing reliable evidence of criminal activity. (*California v. Greenwood* (1988) 486 U.S. 35, 44 [108 S.Ct. 1625, 100 L.Ed.2d 30].)

One of these exceptions, relevant here, is attenuation. If the police obtain evidence by means sufficiently purged of the primary taint, then suppression is not required. Although no single factor is dispositive, those considered are (1) the temporal proximity between the illegal act and the discovered evidence, (2) the presence or absence of intervening circumstances, and (3) the purpose and flagrancy of the misconduct. (*People v. Boyer* (2006) 38 Cal.4th 412, 448–449.)

Here, under *People v. Boyer*, *supra*, 38 Cal.4th 412, the trial court properly denied defendant's motion. First, the officers discovered the probation condition before they searched defendant's car, thus attenuating it from any illegality in the stop because the probation search condition was a lawful basis for conducting a search. Second, the search condition nonetheless provided the officers with a legal authorization to search the car that was independent of the circumstances of the detention. Finally, there was no evidence of flagrancy. Defendant's car was parked at a gas station in a suspicious manner and defendant was engaged in suspicious activity. Under the circumstances here the officers did not stop defendant's vehicle based on a random hunch; they detained defendant based upon reasonable suspicion and conducted a search of the car only after learning he was a probationer with a search condition. Thus, our validation of the officers' conduct here will not contribute to random illegal stops.

The cases cited by defendant, *People v. Brendlin* (2008) 45 Cal.4th 262, *People v. Durant*, *supra*, 205 Cal.App.4th 57 and *People v. Bates*, *supra*, 222 Cal.App.4th 60, are all inapposite because they involved vehicle stops. Defendant's vehicle here was parked at a gas station and defendant was not inside the vehicle at the time of the stop.

7

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.

JOHNSON, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.

8