[No. D041775. Fourth Dist., Div. One. Mar. 22, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER PITTS, Defendant and Appellant.

## COUNSEL

Steven J. Carroll, Public Defender, under appointment by the Court of Appeal, Matthew Braner and Tamara Lave, Deputy Public Defenders, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton and Melissa A. Mandel, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HUFFMAN, Acting P. J.**—Following a denial of his motion to suppress evidence (Pen. Code, § 1538.5), Christopher Pitts entered a negotiated guilty plea to possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) (count 2). The court granted Pitts probation. Pitts appeals, contending the trial court erred in denying his motion to suppress because the officer did not have reasonable suspicion to detain him, and all evidence seized after the unlawful detention must be suppressed as the direct product of the detention. We conclude that under these circumstances the officer lacked reasonable suspicion justifying Pitts's detention. Accordingly, we reverse.

### FACTS

On October 2, 2002, police officer Gene Loucks entered the Rancho Penasquitos area of San Diego to initiate surveillance of 8619 Park Run Road. Loucks suspected narcotics activity at that residence because of a previous arrest in the neighborhood for narcotics possession. A couple of

weeks prior, two San Diego police officers had pulled over Mark Casillan in a residential area near 8619 Park Run Road. After arresting Casillan for being under the influence of narcotics, a search of his car revealed a pound of methamphetamine. A background check of Casillan showed that he had been involved in a previous domestic violence dispute with Jennifer Nuguid, a resident of 8619 Park Run Road. Nuguid had previous juvenile arrests for possession of large amounts of methamphetamine along with other residents at that address. This information led Loucks to suspect that the residence at 8619 Park Run Road was being used in the sale of methamphetamine.

At approximately 1:00 p.m., Loucks drove into the area of 8619 Park Run Road when he noticed a male, later identified as Mr. Callugay, sitting in a truck that was parked on Brickella Street, around the corner from the suspected residence. After driving once around the block, Loucks noticed that Callugay was standing on the corner of Park Run Road looking down the 8600 block of Park Run Road. Callugay made eye contact with Loucks and quickly got back into his truck. Based on his belief Callugay was connected to narcotics trafficking, Loucks stopped him for questioning. Callugay told the officer that he was waiting there for a friend.

While questioning Callugay, a female, later identified as Kimberly Roy-Munoz, rounded the corner from Park Run Road and walked towards the officer and Callugay. When Loucks asked Callugay if Roy-Munoz was his friend, Roy-Munoz responded that she did not know him. Loucks then asked Roy-Munoz who she was and where she was coming from. Roy-Munoz said her name was Kimberly and she was visiting her friend, Jen, whom Loucks believed was Jennifer Nuguid.

As Loucks was talking with Roy-Munoz, Pitts walked around the corner from the 8600 block of Park Run Road. Loucks immediately recognized Pitts from prior contacts with him and his father, and from a "be on the lookout" bulletin that had been released by the San Diego Sheriff's Department in August 2002. This bulletin had been issued as a result of a tip from an untested informant, and stated Pitts's involvement was suspected in the sale of methamphetamine. It also stated that he was on diversion for a previous arrest. Loucks then said, "Hello, Chris," and immediately told Pitts to place his hands on the police car in order to pat him down.

## DISCUSSION

The facts of this case are essentially uncontradicted. "Where the facts bearing on the legality of a challenged detention are undisputed, an appellate court is confronted with a question of law; we must independently determine whether the factual record supports the trial court's . . . conclusions this

detention met the constitutional standard of reasonableness." (*People v. Ramirez* (1996) 41 Cal.App.4th 1608, 1613 [49 Cal.Rptr.2d 311].)

Pitts contends the trial court was incorrect in determining that reasonable suspicion existed for his detention. " '[I]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation], to suspect the same criminal activity and the same involvement by the person in question. The corollary to this rule, of course, is that an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. [Citation.]' " (*People v. Loewen* (1983) 35 Cal.3d 117, 123 [196 Cal.Rptr. 846, 672 P.2d 436], quoting *In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957], fn. omitted.)

The Attorney General argues that Loucks was justified in detaining Pitts based on a reasonable suspicion that Pitts was engaging in criminal activity. The argument claims support from the following factors: (A) a law enforcement bulletin issued more than a month prior that suspected Pitts of being involved in the sale of methamphetamine; (B) a two-to-three-week-old narcotics arrest of Casillan in the vicinity of Park Run Road that led to information that Casillan had a relationship with a 8619 Park Run Road resident who had a previous juvenile arrest for methamphetamine possession; (C) the presence and actions of Callugay and Roy-Munoz; and (D) the fact that Pitts rounded the corner from Park Run Road.

"An investigative detention will be countenanced only if the officers have a specific, articulable and objective factual basis to believe that the person stopped is engaged in criminal activity." (*United States v. Davis* (10th Cir. 1996) 94 F.3d 1465, 1469–1470.) Under these circumstances, the events Loucks relied on in detaining Pitts do not provide enough factual basis independently to satisfy a reasonable suspicion determination. In determining the reasonableness of a detention, however, "the totality of the circumstances—the whole picture—must be taken into account." (*United States v. Cortez* (1981) 449 U.S. 411, 417 [66 L.Ed.2d 621, 101 S.Ct. 690].) In any event, considering these facts together, the irrelevance, unreliability or unrelated nature of the respective parts do not add up to the requisite specific and

articulable facts that would satisfy the reasonable suspicion standard. Therefore, in order to give this set of circumstances adequate consideration, we must review each of these factors in turn, and then consider their relation to the whole.

## A. First Factor: The "Be On the Lookout" Bulletin

The Attorney General argues that one factor which contributed to Pitts's detention was the officer's reliance on the bulletin notifying law enforcement personnel to "be on the lookout" for Pitts. According to the bulletin, which was issued over a month prior to the detention, an untested informant had provided information that suggested Pitts's involvement in the sale of methamphetamine. The bulletin also stated that Pitts was on diversion from a previous narcotics arrest. However, the bulletin provided no particularized information to support this conclusion, only the allegation by the untested informant.

■ "Courts will uphold an investigatory stop based on a tip or other secondary information only when the information possesses sufficient indicia of reliability that are independently corroborated by the police." (*United States v. Thomas* (9th Cir. 2000) 211 F.3d 1186, 1190.) Here, the allegation made by the untested informant was completely void of any indicia of reliability. The information did not demonstrate the informant's basis for such knowledge, nor could Loucks judge the veracity of the informant. Additionally, the lack of predictive information about Pitts's actions hindered the ability of Loucks to corroborate the accusations. Without more independent evidence confirming the allegations of the informant, the bulletin relied upon by Loucks remained purely speculative and unsupported. Therefore, any other factors relied upon by Loucks in the reasonable suspicion determination must have been founded on his personal observations while in the area.

## B. Second Factor: 8619 Park Run Road

The second factor offered in support of the reasonableness of the detention is the nature of the suspected residence. Loucks believed that 8619 Park Run Road was a site for drug activity. However, this assumption was based upon an attenuated set of facts. Loucks initially suspected drug activity because Casillan had previously been arrested several weeks earlier while driving in the vicinity of Park Run Road. After police officers discovered a large amount of methamphetamine in his car, a background check of Casillan revealed a prior domestic violence dispute with a resident in the area who had juvenile arrests for drug possession. However, Loucks was unaware of the current status of Casillan's relationship with the resident, and had no information regarding the dates of the resident's prior arrests. This is obviously a tenuous

set of facts, yet they provided the basis for Loucks's assumption that 8619 Park Run Road was currently being used as a site for drug sales.

■ Even assuming that Loucks had a valid basis for believing the residence was a drug sales site, his reliance on this fact to detain Pitts is partly misplaced. "An 'officer's assertion that the location lay in a "high crime" area does not elevate . . . facts into a reasonable suspicion of criminality. The "high crime area" factor is not an "activity" of an individual. Many citizens of this state are forced to live in areas that have "high crime" rates or they come to these areas to shop, work, play, transact business, or visit relatives or friends. The spectrum of legitimate human behavior occurs every day in so-called high crime areas. . . .' " (*People v. Loewen, supra,* 35 Cal.3d at p. 124, quoting *People v. Bower* (1979) 24 Cal.3d 638, 645 [156 Cal.Rptr. 856, 597 P.2d 115].) Before detaining Pitts, Loucks had neither confirmed why Pitts was in the area, nor reduced the wide spectrum of possible explanations for Pitts's presence. "The fact that [Pitts] was in a neighborhood frequented by drug [sales], standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct. In short, the appellant's activity was no different from the activity of other pedestrians in that neighborhood." (*Brown v. Texas* (1979) 443 U.S. 47, 52 [61 L.Ed.2d 357, 99 S.Ct. 2637].)

However, Loucks's reliance on this fact is only *partly* misplaced because we recognize that "[w]hile a person cannot be detained for mere presence in a high crime area without more [citations], this setting is a factor that can lend meaning to the person's behavior. [Citations.]" (*People v. Limon* (1993) 17 Cal.App.4th 524, 532 [21 Cal.Rptr.2d 397].) It is necessary to evaluate the behavior Loucks observed in the short time he was present in the area, as the location can provide context. His observations will be discussed in the next two factors.

## C. Third Factor: Callugay and Roy-Munoz

The Attorney General next argues that part of the justification for Pitts's detention is based on Loucks's observations of Callugay and Roy-Munoz's presence. The argument asserts the presence of a parked truck around the corner from the suspected drug house, the movements of Callugay, and the encounter of Roy-Munoz should all be incorporated into the reasonable suspicion analysis involving Pitts's detention. Before considering whether Pitts's detention can be based on the conduct and actions of others, however, we must first analyze such underlying behavior to see if it was consistent with drug activity.

■ The primary focus of Loucks's attention centered on his brief observation of Callugay. Loucks's interpretation of Callugay's activity was characterized

as a "common" behavior pattern in drug transactions. The prosecution contends that such behavior provides further context in justifying Pitts's detention. While "observations of evasive or erratic driving tactics or other furtive conduct by people coming to and going from a particular residence" can be considered as indicia of illegal activity, (*United States v. Thomas, supra,* 211 F.3d at p. 1190), Loucks did not observe such activities here. Even assuming Loucks was correct in believing that a "drug house" was nearby, Callugay's actions do not suggest illegal activity. In *United States v. Davis, supra,* 94 F.3d 1465, the court stated when dealing with similar facts that "Davis' actions in exiting the car, making and then breaking eye contact with the officers, and then walking away from the officers also do not furnish the basis for a valid *Terry* [*v. Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]] stop. Looking at a police officer and then looking away does not provide the officer with 'a particularized and objective basis for suspecting the person stopped of criminal activity' [citations]." (*United States v. Davis, supra,* at p. 1468.) There, the appellant's car was parked outside of a *known* criminal establishment, and still his presence and conduct did not give rise to a reasonable suspicion of criminal activity. Here, Callugay was parked on a residential street around the corner from a "suspected" criminal establishment, and he engaged in the same basic movements. Loucks's suspicion that Callugay was engaging in criminal activity had even less factual support than that presented in *Davis.*

Loucks's questioning of Roy-Munoz provides further evidence of uncertainty as to Pitts's actual involvement. After only briefly watching Callugay and then questioning him, Loucks proceeded to question Roy-Munoz, the first person who rounded the corner. Whether or not Roy-Munoz was actually coming from 8619 Park Run Road was unknown. Regardless, it appears that under Loucks's evaluation of the circumstances, each pedestrian coming from that direction was tainted with suspicion. Additionally, if Loucks believed that Roy-Munoz was visiting Nuguid, and assuming Callugay was acting as a lookout for a person visiting that address, then a natural conclusion would be that Roy-Munoz was the offender. Again, the subsequent detention of Pitts would indicate that Loucks was stopping any pedestrian who rounded the corner coming from the direction of 8619 Park Run Road.

### D.   Fourth Factor: Pitts's Presence

Even assuming that Loucks had a valid justification for detaining Callugay and Roy-Munoz for investigative purposes, the prosecution goes one step further and asks this court to incorporate Callugay's and Roy-Munoz's actions in determining the constitutionality of Pitts's detention. This assumption is based on the three pedestrians' mutual presence in a residential neighborhood at 1:00 p.m. The contention is that Pitts's presence when combined with the

preceding actions of Callugay and Roy-Munoz elevates his presence as a pedestrian to engaging in illegal activity. This assumption is correct only in that Pitts's presence was consistent with *any* form of activity. By simply rounding the corner, Pitts aligns himself not only with possible illegal activity, but also with the activity of any law-abiding pedestrian. (*Brown v. Texas, supra,* 443 U.S. at p. 52.) Loucks was unaware of specific information linking Pitts to the suspected drug house or to Callugay or Roy-Munoz. He merely reacted on the basis of Pitts's history and presence.

### E.   "The Whole Picture"

While each of the individual pieces of information Loucks relied upon were somehow flawed or inadequate, this is not the end of the reasonable suspicion analysis. In determining the reasonableness of a detention, this court must take into account "the totality of the circumstances—the whole picture . . . . Based upon that whole picture the detaining officer[] must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." (*United States v. Cortez, supra,* 449 U.S. at pp. 417–418.) We have already determined that the individual pieces of information were so internally flawed or irrelevant or unrelated to the circumstances of October 2, that they are unreliable or inadequate in the reasonable suspicion determination. Even considered in their totality, the circumstances known or apparent to Loucks at the point of detention did not include any specific and reliable information indicating Pitts was presently engaged in criminal activity.

■   Rather than relying on specific and articulable facts, Loucks merely reacted on a hunch that Pitts was somehow connected to drug activity. "A hunch may provide the basis for solid police work; it may trigger an investigation that uncovers facts that establish reasonable suspicion, probable cause, or even grounds for a conviction. A hunch, however, is not a substitute for the necessary specific, articulable facts required to justify a Fourth Amendment intrusion." (*United States v. Thomas, supra,* 211 F.3d at p. 1192.) By reacting on a hunch and immediately stopping Pitts and subjecting him to a search, Loucks's actions, despite maintaining a good faith suspicion that Pitts was engaging in drug activity, were unreasonable. The information available to Loucks was insufficient in its individual parts and sum total to constitute the requisite amount of specific and articulable facts to justify Pitts's detention. The detention was, therefore, unlawful.

## DISPOSITION

The judgment is reversed.

Nares, J., and McDonald, J., concurred.