Filed 6/29/15  In re Victor C. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Victor C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>VICTOR C.,<br><br>        Defendant and Appellant. | A141599<br><br>(Mendocino County Super. Ct. No. SCUK JDSQ 13-1691201-002) |

Victor C. appeals from the juvenile court's jurisdiction findings and an order declaring him a ward of the court.  Victor, who was 16 years old at the time of the offenses, was found to have carried a concealed dirk or dagger (Pen. Code, § 21310) and resisted a police officer (*id.*, § 148, subd. (a)(1)).  On appeal, Victor contends his trial counsel was ineffective for failing to move to suppress evidence purportedly obtained through an illegal detention and arrest; the jurisdictional findings are not supported by substantial evidence; and the juvenile court abused its discretion by denying his motion for informal supervision, under Welfare and Institutions Code section 654.2.[1]  We agree that substantial evidence does not support the juvenile court's finding that Victor concealed a knife on his person.  Accordingly, we remand for a new disposition hearing.

---

        [1] Undesignated statutory references are to the Welfare and Institutions Code.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On December 25, 2013, around 3:00 a.m., Fort Bragg Police Officer Jeremy Mason was patrolling, in uniform and a marked police car, in an area that had recently reported multiple mail thefts. Specifically, Mason testified that on the previous day approximately 47 thefts had been reported of "gifts, money, gift cards all that kind of stuff sent during the holiday season." It was raining intermittently and several street lights were out, "so it was very dark."

Mason noticed someone wearing dark clothes walking eastbound on the sidewalk of East Pine Street: "[W]hen I first saw the person, I was quite a distance away and the only thing I noted was that it was early morning hours and the person was in dark clothing on Christmas, it seemed suspicious to me." Mason maneuvered his car to get closer and drove very slowly. Mason didn't see anyone, "which seemed odd." Once past the area where he had seen the person, Mason looked in his rearview mirror and noticed "something underneath a SUV . . . in the area I had seen the person in the first place."

Mason turned his car around and returned to the location "to try to figure out what that object was. [¶] . . . [¶] Initially it looked like some kind of cat or something, it was a white object moving around oddly." Mason then saw "two legs and shoes of a person. [¶] . . . [¶] . . . And as I was driving eastbound I noted the person[, later identified as Victor,] was now staying, keeping the vehicle between themselves and me." Mason was asked, "were you able to see the top part of [Victor's] body?" Mason responded, "[n]ot at all." Thinking Victor was "acting very suspiciously," Mason got out of his car and approached on foot. Victor "stood up" and started walking westbound away from Mason.

Mason called out, "Hey, over there, what are you doing?" Victor did not respond to being addressed in a "normal tone," so Mason "upped [the] level of authority" in his voice and repeated the question. When Victor still failed to respond, Mason approached so that he was about 10 feet away from Victor and yelled, "Hey, stop." Victor started to run, and as Mason gave chase he heard an object fall from Victor and hit the ground. Mason could not initially see what fell, but could tell from the noise that it was metal.

2

Victor eventually slipped and fell. Mason fell on top of Victor and placed him in handcuffs. After Victor was placed in a police car, Mason returned to the area where Victor had been running to look for stolen items. Mason found a large knife and a sheath on the ground. The knife blade was about six inches long. Mason believed that the knife fell from Victor's person, and he was certain that it could not have fallen out of Victor's pant leg or hands. Victor wore "a large dark shirt with dark pants." Mason said, "if I recall correctly" Victor's shirt was not tucked in. Mason could not remember whether Victor was wearing a belt. Mason reviewed his report and stated, "I don't specifically see where I noted that he was wearing a belt."

Victor was taken to the Fort Bragg police station. Victor was intoxicated. After being allowed to use the restroom at the police station, he shoved Mason out of the way, fled outside to the parking lot, and unsuccessfully attempted to scale a chain link fence topped with three feet of barbed wire. During booking, Victor responded affirmatively to a question about whether he intended to harm himself. Mason testified: "He [stated he] was going to use his knife [to cut his throat] and pointed to the knife that was sitting next to me on the booking table . . . ."[2]

The Mendocino County District Attorney filed a section 602 petition, which charged Victor with carrying a concealed dirk or dagger (Pen. Code, § 21310; count one); prowling (*id.*, § 647, subd. (h); count two); obstructing or resisting a police officer (*id.*, § 148, subd. (a)(1); counts three and five); and violation of curfew (Mendocino County Code, §§ 8.08.010, 8.08.030; count four).[3] Victor was detained for further investigation of his claims that he wanted to harm himself and that he suffered physical abuse at home.

---

[2] Defense counsel objected to admission of Victor's statement regarding the knife, relying on *Miranda v. Arizona* (1966) 384 U.S. 436. The juvenile court overruled the objection because Victor's incriminating statement was made in response to standard booking questions and not during custodial interrogation. (See *People v. Williams* (2013) 56 Cal.4th 165, 187, disapproved on other grounds by *People v. Elizalde* (June 25, 2015, S215260) ___ Cal.4th ___.)

[3] Victor filed a successful demurrer against count two. Count four was later dismissed on the People's motion.

At the contested jurisdictional hearing, the juvenile court found counts one, three, and five to be true. At disposition, the court elected to treat count one, a "wobbler," as a misdemeanor. The court adjudged Victor a ward of the court and imposed formal probation in parental custody. The court explained: "And because there [are] some issues with regards to the family, . . . I'm concerned about the lack of candor and cooperation during the interview, there was a lot of contradictory information there. I'm going to follow probation's recommendation and declare Victor a ward as opposed to adopt the defense request for informal probation." Victor filed a timely notice of appeal.

## II. DISCUSSION

Victor contends: (1) his trial counsel was ineffective for failing to move to suppress evidence purportedly obtained through an illegal detention and arrest; (2) the juvenile court's jurisdictional findings are not supported by substantial evidence; and (3) the juvenile court abused its discretion by denying his motion for informal supervision, under section 654.2, without obtaining a more detailed report from the probation department. We conclude that Victor's substantial evidence argument has merit with respect to count one.

A. *Fourth Amendment*

Victor contends that the knife and his statement about the knife should have been suppressed as the fruits of an illegal detention or arrest. Recognizing the claim was forfeited by failure to raise it below, Victor argues that his trial counsel was ineffective in failing to move to suppress.

To establish ineffective assistance of counsel, a defendant must show: (1) counsel's performance was so deficient that it fell below an objective standard of reasonableness, under prevailing professional norms, and (2) the deficient performance was prejudicial, rendering the results of the trial unreliable or fundamentally unfair. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 692; *People v. Ledesma* (1987) 43 Cal.3d 171, 216–217.) As an ineffective assistance of counsel claim fails on an insufficient showing of either element, a court need not decide the issue of counsel's alleged deficiencies before deciding if prejudice occurred. (*People v. Rodrigues* (1994)

4

8 Cal.4th 1060, 1126.)  Generally, prejudice must be affirmatively proved.  (*Strickland*, at p. 693.)

"The Sixth Amendment does not require counsel to raise futile motions."  (*People v. Solomon* (2010) 49 Cal.4th 792, 843, fn. 24.)  Thus, "[a] claim of ineffective assistance of counsel based on a trial attorney's failure to make a motion or objection must demonstrate not only the absence of a tactical reason for the omission [citation], but also that the motion or objection would have been meritorious, if the defendant is to bear his burden of demonstrating that it is reasonably probable that absent the omission a determination more favorable to defendant would have resulted."  (*People v. Mattson* (1990) 50 Cal.3d 826, 876.)  We agree with the People that a motion to suppress would not have been successful.

1.    *Reasonable Suspicion*

Victor contends his detention violated the Fourth Amendment because Mason had no reason to believe Victor was involved in criminal activity.  "The Fourth Amendment protects against unreasonable searches and seizures.  (U.S. Const., 4th Amend.; *Terry v. Ohio* (1968) 392 U.S. 1.)  'A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.'  (*People v. Souza* (1994) 9 Cal.4th 224, 231.)"  (*People v. Hernandez* (2008) 45 Cal.4th 295, 299.)

" ' "[I]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity.  Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so:  the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation], to suspect the same criminal activity and the same involvement by the person in question.  The corollary to this rule, of course, is that an investigative stop or detention predicated

5

on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith." ' " (*People v. Pitts* (2004) 117 Cal.App.4th 881, 885.) In determining the reasonableness of a detention, we must consider "the totality of the circumstances—the whole picture . . . . [¶] [A]n assessment of the whole picture must yield a particularized suspicion . . . [¶] . . . [¶] that the particular individual being stopped is engaged in wrongdoing." (*United States v. Cortez* (1981) 449 U.S. 411, 417–418.)

Victor premises his Fourth Amendment argument on the notion that he was detained when Mason ordered him to stop and that nothing was suspicious about "walking with parked cars between himself and Officer Mason's police car . . . because there are always parked cars separating a person walking on the sidewalk from a person driving along in the road." In contrast, the People maintain no seizure occurred until Victor was handcuffed and seizure at that time was justified in the "totality of circumstances" of Victor's act of "hiding under a parked car," his flight, and the falling metallic object. Neither party accurately characterizes Mason's testimony. Although the record is ambiguous, it supports a reasonable inference that Mason observed Victor attempting to hide behind, but not under, the SUV. However, the People are correct on the legal point.

"A seizure through a show of authority occurs when a reasonable person would not believe he or she is free to leave or to decline an officer's request." (*People v. Bates* (2013) 222 Cal.App.4th 60, 65.) The United States Supreme Court has made clear, however, that this test "states a *necessary*, but not a *sufficient*, condition for seizure." (*California v. Hodari D.* (1991) 499 U.S. 621, 628.) "[F]or purposes of the Fourth Amendment, a seizure does not occur where a suspect does not yield to an officer's show of authority." (*People v. Magee* (2011) 194 Cal.App.4th 178, 191, fn. 12, citing *Hodari D.,* at pp. 625–626.) In other words, an attempted seizure is not a seizure.

Had Victor in fact stopped on Mason's initial order to do so, he clearly would have been detained. And assuming for purposes of argument that Victor was detained when Mason instructed him to stop, the detention was nonetheless lawful. Before giving the order to stop, Mason observed Victor walking outside at 3:00 a.m. on a rainy night in an

6

area where multiple thefts had recently occurred. Although "time and location of an encounter are insufficient by themselves to cast reasonable suspicion on an individual" (*People v. Medina* (2003) 110 Cal.App.4th 171, 177), such factors are relevant to a determination of "whether the circumstances are sufficiently suspicious to warrant further investigation." (*Illinois v. Wardlow* (2000) 528 U.S. 119, 124; *People v. Pitts, supra*, 117 Cal.App.4th at p. 887.)

Here, sufficient additional context justified Mason's suspicion. When Mason drove by in his marked police car, Victor attempted to hide behind an SUV. When Mason approached, Victor turned and walked in the direction from which he had just come. "[A] refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure" (*Florida v. Bostick* (1991) 501 U.S. 429, 437), but "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." (*Illinois v. Wardlow, supra*, 528 U.S. at p. 124; see also *People v. Souza, supra,* 9 Cal.4th at pp. 234–235 ["that a person approached by police for questioning may decline to answer the questions and 'may go on his way,' does not imply that the *manner* in which a person avoids police contact cannot be considered . . . by courts assessing reasonable cause"].)

*People v. Souza, supra*, 9 Cal.4th 224, is illustrative. In *Souza*, police noticed the defendant standing next to a parked car, in a high crime area, and talking to its occupant. It was 3:00 a.m. and very dark. When the police turned on a spotlight, the defendant ran, and narcotics were discovered after he was apprehended and frisked. (*Id.* at p. 228.) Our Supreme Court affirmed the denial of his motion to suppress, concluding that the Fourth Amendment was not violated because the detention occurred in a high crime area, late at night, after the defendant exhibited suspicious behavior and then ran from police. (*Id.* at p. 242.) Here, just as in *Souza,* Mason had a reasonable basis to suspect that Victor was involved in criminal activity before giving the order to stop.[4]

---

[4] Victor misplaces his reliance on *In re Tony C.* (1978) 21 Cal.3d 888, which was superseded on other grounds by the passage of Proposition 8 (Cal. Const., art. I, § 28). In *Tony C.*, a highway patrol officer stopped two black youths walking on the sidewalk in

7

2.    *Probable Cause*

After Mason told Victor to stop, Victor ignored the order and ran.  Only when Victor fell and was handcuffed was he seized within the meaning of the Fourth Amendment.  (See *California v. Hodari D., supra,* 499 U.S. at pp. 625–626; *People v. Magee, supra,* 194 Cal.App.4th at p. 191, fn. 12.)  It appears undisputed that Mason's seizure of Victor, at that point, went beyond a temporary detention and became an arrest.  (See *People v. Stier* (2008) 168 Cal.App.4th 21, 27 ["[h]andcuffing substantially increases the intrusiveness of a detention and is not part of a typical detention"].)

"A warrantless arrest in a public place does not violate the Fourth Amendment so long as the police have probable cause.  [Citation.] . . . 'Probable cause exists when the facts known to the arresting officer would persuade someone of "reasonable caution" that the person to be arrested has committed a crime.  [Citation.]  "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts . . . ." [Citation.]  It is incapable of precise definition.  [Citation.]  " 'The substance of all the definitions of probable cause is a reasonable ground for belief of guilt,' " and that belief must be "particularized with respect to the person to be . . . seized." ' " (*People v. Lujano* (2014) 229 Cal.App.4th 175, 183.)

Victor contends that Mason lacked probable cause to arrest because "Mason never had reason to believe that [Victor] was carrying a *concealed* weapon or had committed any other crime."  The People, on the other hand, suggest that Mason had probable cause to arrest Victor after finding the knife.  But the knife was only discovered after Victor

_____

the middle of the day because he had "learned informally" the previous day that several burglaries had been reported in the area and " 'three male blacks' were being sought." (*Id*. at p. 896.)  The reviewing court found the detention unsupported by reasonable suspicion because "[t]here is nothing suspicious in the sight of two school children walking along the sidewalk during the noon hour . . . ." (*Id.* at p. 897.)  "To [uphold the detention] would authorize the police to stop and question every black male, young or old, in an area in which a few black suspects were being sought.  Such wholesale intrusion into the privacy of a significant portion of our citizenry would be both socially intolerable and constitutionally impermissible." (*Id.* at p. 898, fn. omitted.)  The facts before us are readily distinguishable.

8

was handcuffed and placed in a police car. Nonetheless, by the time Victor was handcuffed, Mason had probable cause to believe he was guilty of resisting arrest (Pen. Code, § 148, subd. (a)).[5]

" 'The legal elements of a violation of [Penal Code] section 148, subdivision (a) are as follows: (1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the [*lawful*] performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties.' " (*People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 759, italics added & brackets in original; *In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1329 ["physical resistance, hiding, or running away from a police officer have been found to violate section 148"].) When a police officer has the legal right to detain a minor, a minor's flight which delays the officer's ability to effect a lawful detention violates Penal Code section 148, provided the person fleeing knows the officer wishes to detain him. (*In re Gregory S.* (1980) 112 Cal.App.3d 764, 778; *People v. Allen* (1980) 109 Cal.App.3d 981, 985–987.) At no time has Victor argued that he was unaware of Mason's wish to detain him and, as discussed *ante,* that attempted detention was supported by reasonable suspicion. Thus, by observing Victor's actions thereafter, Mason had probable cause to arrest. (*People v. Allen, supra,* 109 Cal.App.3d at p. 987 [police officer had probable cause to arrest for violation of Pen. Code § 148 when defendant ran and hid in attempt to avoid lawful detention].)

3.    *Ineffectiveness of Counsel*

Having concluded that Mason had both the legal right to detain Victor and subsequent probable cause to arrest him, a motion to suppress the knife and Victor's statement about the knife as the fruits of an illegal detention or arrest would have been

---

[5] "Every person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment" is guilty of a misdemeanor. (Pen. Code, § 148, subd. (a)(1).)

properly denied.  Trial counsel did not render ineffective assistance by failing to make a motion that would not have been successful.

B.    *Resisting Arrest*

Victor makes a related argument that the juvenile court's true findings on counts three and five are not supported by substantial evidence.  When faced with such a challenge, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578; accord, *Jackson v. Virginia* (1979) 443 U.S. 307, 318–319; *In re Jose R.* (1982) 137 Cal.App.3d 269, 275.)  "A reviewing court must accept logical inferences the [fact finder] might have drawn from the circumstantial evidence. [Citation.]  ' "A reasonable inference, however, 'may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. [¶] . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence.' " ' " (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1416–1417.)

Victor's position is that there was insufficient evidence that Mason was acting lawfully when he attempted to detain Victor.  (See *Yount v. City of Sacramento* (2008) 43 Cal.4th 885, 894 [Pen. Code, § 148, subd. (a)(1) "requires that the officer be lawfully engaged in the performance of his or her duties" (italics omitted)].)  " 'Under California law, an officer is not lawfully performing her duties when she detains an individual without reasonable suspicion or arrests an individual without probable cause.' " (*Garcia v. Superior Court* (2009) 177 Cal.App.4th 803, 819, italics omitted.)  Specifically, Victor contends that Mason was acting unlawfully "by attempting to detain him without reasonable suspicion, and by then arresting him without probable cause."  We have already rejected these arguments.

When Mason yelled "stop," he had reasonable suspicion justifying his attempt to detain Victor.  Victor resisted when he ran thereafter.  (See *In re Gregory S., supra*,

112 Cal.App.3d at p. 778.)  Mason also had probable cause to arrest Victor.  (See *People v. Allen, supra,* 109 Cal.App.3d at pp. 985–987.)  Substantial evidence supports the true findings on counts three and five.

C.　　*Carrying a Concealed Dirk or Dagger*

Victor also challenges the juvenile court's true finding on count one—carrying a concealed dirk or dagger (Pen. Code, § 21310).  He contends the finding "should be reversed for lack of any [substantial] evidence that the knife carried on [Victor's] person was concealed."  We agree.

In relevant part, Penal Code section 21310 provides:  "[A]ny person in this state who carries concealed upon the person any dirk or dagger is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170."  Only substantial concealment, not complete concealment, is required under the statute.  (*People v. Wharton* (1992) 5 Cal.App.4th 72, 75 [knife concealed where "one and one-half to two inches of the [knife] blade were protruding from defendant's pocket"].)  However, a knife carried openly, in an ordinary sheath suspended from the waist is not "concealed."  (*In re Alfredo S.* (1984) 162 Cal.App.3d 800, 802.)

With respect to its true finding on count one, the juvenile court explained:  "Although there was not direct evidence of where this knife was concealed on Victor's person, the testimony of the officer established that Victor was wearing dark pants and a large untucked dark shirt, *there was no evidence of any belt found on Victor on the date in question*.  The officer heard the knife fall, he wrote in his report that he saw something fall from Victor's person and Victor admitted during his comments in response to booking questions that the knife, in fact, was his knife."  (Italics added.)

Victor contends that the only reasonable inference from the record is that it was simply not known where Victor carried the knife.  He relies on the facts that it was very dark, Mason did not actually see the knife fall, and Mason was certain the knife did not fall from Victor's pant leg.  When Mason recovered the knife, he found its sheath nearby.  In fact, on cross-examination Mason was asked, "So it had to fall from where, on the

11

outside of his pants *where you would see it*?  Is that a 'yes'?"  (Italics added.)  The prosecutor raised no objection to the question and Mason answered, "Yes."

To support the juvenile court's finding, the People rely on Mason's testimony that he could see Victor's hands during the chase, Victor was not holding the knife in his hands, Victor wore "a large dark shirt with dark pants," and, "[i]f [he] recall[ed] correctly," Victor's shirt was not tucked into his pants.  The People also contend that Victor "was not wearing a belt."  But Mason only testified that he could not recall exactly what Victor was wearing when arrested, he could not recall whether Victor wore a belt, and no mention of a belt was made in his report.  This testimony is not substantial evidence that Victor was not wearing a belt.  (*Louis & Diederich, Inc. v. Cambridge European Imports, Inc.* (1987) 189 Cal.App.3d 1574, 1591–1592 [" 'I don't recall' " testimony is insufficient to support a finding that event not recalled either did or did not occur].)  The fact that Mason did not see the knife before it was recovered on the sidewalk is not substantial evidence of concealment in the circumstances present here— where it was very dark and, before the knife fell, Mason did not see anything but Victor's back and feet at a close distance.  The People and juvenile court appear to rely on nothing more than the possibility that the knife was concealed under Victor's clothing.  "A theoretical possibility is not the equivalent of substantial evidence."  (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 646, fn. omitted.)

Substantial evidence does not support the juvenile court's finding that Victor concealed a dirk or dagger on his person.  "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding."  (*Burks v. United States* (1978) 437 U.S. 1, 11, fn. omitted; accord, *People v. Hatch* (2000) 22 Cal.4th 260, 271–272; *In re Johnny G.* (1979) 25 Cal.3d 543, 546.)  Accordingly, the true finding on count one must be reversed and retrial is barred.

D.     *Informal Supervision Under Section 654.2*

Finally, Victor argues that the juvenile court erred, at the outset of the proceedings, by failing to exercise informed discretion with respect to informal

12

supervision under section 654.2. "In any case in which a probation officer, after investigation of an application for a petition or any other investigation he or she is authorized to make concludes that a minor is within the jurisdiction of the juvenile court or will probably soon be within that jurisdiction, the probation officer may, in lieu of . . . requesting that a petition be filed by the prosecuting attorney to declare a minor a ward of the court under . . . Section 602 and with consent of the minor and the minor's parent or guardian, delineate specific programs of supervision for the minor, for not to exceed six months, and attempt thereby to adjust the situation which brings the minor within the jurisdiction of the court or creates the probability that the minor will soon be within that jurisdiction." (§ 654.) "[S]ection 654.2 was enacted to permit the court to order a section 654 informal supervision program for a minor after a section 602 petition has been filed."[6] (*In re Adam R.* (1997) 57 Cal.App.4th 348, 351–352, fn. omitted.) "[O]nce a petition under section 602 is filed, institution of informal probation is no longer solely the province of the probation officer, but that informal probation will be instituted on the basis of court action. . . . Only the court may dismiss the section 602 petition, and neither the district attorney, the minor's counsel nor the probation officer can interfere with the exercise of judicial power." (*Charles S. v. Superior Court* (1982) 32 Cal.3d 741, 747.) "[T]here is an obvious strong public policy interest in rehabilitating minors without, if possible, making them wards of the juvenile court." (*In re Omar R.* (2003) 105 Cal.App.4th 1434, 1439.)

1.  *Background*

Approximately two weeks after the section 602 petition was filed, Victor filed a section 654.2 motion requesting informal supervision. Victor's counsel acknowledged

---

[6] Section 654.2, subdivision (a), provides in relevant part: "If a petition has been filed by the prosecuting attorney to declare a minor a ward of the court under Section 602, the court may, without adjudging the minor a ward of the court and with the consent of the minor and the minor's parents or guardian, continue any hearing on a petition for six months and order the minor to participate in a program of supervision as set forth in Section 654. . . . If the minor successfully completes the program of supervision, the court shall order the petition be dismissed."

13

that informal supervision was only available to a first time offender charged with a felony "in unusual cases." (§ 654.3, subd. (h).)[7] However, Victor's trial counsel pointed out that, in addition to having no prior juvenile record, Victor had a 3.46 grade point average and was intoxicated and suicidal on the night of his arrest.

At the hearing, on January 21, 2014, the prosecutor indicated that she had not received Victor's moving papers. Victor's counsel indicated he would agree to a week's continuance, but said, "I'd like to go forward." Once given an opportunity to review the motion, the prosecutor said she was "perfectly happy responding to [it] orally." The prosecutor argued: "The motion for informal probation, [Victor's trial counsel] files these very frequently, and the difficulty has always been for everyone is that in a case like this, when it is the first petition or first encounter with the minor, nobody, not probation, or anybody else, has a lot of information about the minor, about how he's doing in school, about the familial situation. [¶] . . . [¶] This was a situation in which Victor was telling everybody who would listen that his parents were . . . abusing him and were going to beat him if he went home and were going to kill him, and he was thinking of taking his own life . . . . So, there was concern on the part of what was going on with the family itself . . . . [¶] . . . [¶] . . . According to the [Child Protective Services] records, there was no indication of ongoing physical abuse. . . . Their investigation indicated that basically Victor had made it all up. [¶] And no one was then sure whether or not anything that he said could be trusted. . . . [¶]. . . [¶] [Also], that fact pattern which is in the police reports . . . plus the knife . . . , and his being out at three in the morning, and intoxicated,

---

[7] Section 654.3 provides, in relevant part: "No minor shall be eligible for the program of supervision set forth in Section 654 or 654.2 in the following cases, *except in an unusual case where the interests of justice would best be served* and the court specifies on the record the reasons for its decision: [¶] . . . [¶] (h) The minor is alleged to have committed a felony offense when the minor was at least 14 years of age. *Except in unusual cases* where the court determines the interest of justice would best be served by a proceeding pursuant to Section 654 or 654.2, a petition alleging that a minor who is 14 years of age or over has committed a felony offense *shall proceed* under Article 20.5 (commencing with Section 790) or Article 17 (commencing with Section 675)." (Italics added.)

gives me pause to say I'm not consenting at this point to a 654.2. [¶] . . . [¶] This case had a myriad of potential serious problems that probation might need to address in a formal . . . manner or that a [dependency] court may need to address in a formal manner; but, until we know more about it, I cannot agree, although I know I do not need to agree as a matter of law. I could not recommend a 654.2 to this court until we have a little better handle on what's going on."

The court also asked for the probation officer's position, who said, "I think probation [is] kind of in agreement with [the prosecutor.] I feel like there's too many concerns to allow a 654 at this time. I believe, with more discovery and more investigation with the family, we can find out a little bit more." Victor's trial counsel maintained that unusual circumstances justified informal supervision because "[w]e don't know where he carried that weapon" and "neither does the arresting officer. Number one. [¶] Number two, [Victor] has a spotless record and an outstanding GPA. This is what section 654 is designed for."

The juvenile court denied the motion without prejudice, stating that Victor was not generally eligible for informal supervision because he was charged with a felony. The court also said: "While it is true that the referral back under 654.2 can be ordered over the district attorney's objection, it is discretionary with the court and it is discretionary with probation whether they believe that the minor would benefit from such a program. [¶] At the current time the court's going to exercise its discretion to deny the referral back without prejudice. If further facts come to light that warrant this and make the court believe that it is in fact in this minor's best interest, and that it is the exceptional case that warrants a referral on a felony charge, it can be raised again."

2.    *Analysis*

Victor contends that the juvenile court abused its discretion in denying informal supervision under section 654.2 because it acted without a detailed report from probation. He points to California Rules of Court, rule 5.516(b), which provides: "In determining whether to undertake a program of informal supervision *of a child not described by rule 5.514(d)*, the social worker or probation officer must consider: [¶] (1) If the condition or

15

conduct is not considered serious, whether the child has had a problem in the home, school, or community that indicates that some supervision would be desirable; [¶] (2) Whether the child and the parent or guardian seem able to resolve the matter with the assistance of the social worker or probation officer and without formal court action; [¶] (3) Whether further observation or evaluation by the social worker or probation officer is needed before a decision can be reached; [¶] (4) The attitudes of the child and the parent or guardian; [¶] (5) The age, maturity, and capabilities of the child; [¶] (6) The dependency or delinquency history, if any, of the child; [¶] (7) The recommendation, if any, of the referring party or agency; [¶] (8) The attitudes of affected persons; and [¶] (9) Any other circumstances that indicate that a program of informal supervision would be consistent with the welfare of the child and the protection of the public."  (Italics added.)

Specifically, he asserts:  "If a probation department has already done its job of investigating whether a minor should be diverted pre-petition under section 654, then the probation department can easily prepare a report providing the information which the juvenile court needs to exercise informed discretion under section 654.2 should the minor request post-petition diversion.  In this case, however, the probation officer admitted that the department had not conducted a thorough pre-filing section 654 investigation."  However, Victor overlooks that the probation department did not have any prepetition duty to assess informal supervision.  (Cal. Rules of Court, rule 5.514(d) ["[t]he probation officer must refer to the prosecuting attorney, within 48 hours, all affidavits requesting that a petition be filed under section 602 if it appears to the probation officer that: [¶] . . . [¶] (2) The child was 16 years of age or older on the date of the alleged offense and the referral is for a felony offense"]; § 653.5, subd. (c)(3).)[8]  Victor was presumptively

8 "Whenever any person applies to the probation officer to commence proceedings in the juvenile court, the application shall be in the form of an affidavit alleging that there was or is within the county, or residing therein, a minor within the provisions of Section 602, or that a minor committed an offense described in Section 602 within the county, and setting forth facts in support thereof.  The probation officer shall immediately make any investigation he or she deems necessary to determine whether proceedings in

16

ineligible for informal probation because of the felony allegations. (§ 654.3, subd. (h); *In re Spencer S.* (2009) 176 Cal.App.4th 1315, 1328 ["in the aftermath of Proposition 21, informal probation pursuant to programs of supervision is generally unauthorized for juvenile felons aged 14 and older"]; *Derick B. v. Superior Court* (2009) 180 Cal.App.4th 295, 304 ["program of informal supervision under section 654 or 654.2 [generally] applies only to first-time minor offenders who are alleged to have committed no more than misdemeanors"].)

This presumption may be overcome "in an unusual case where the interests of justice would best be served and the court specifies on the record the reasons for its decision . . . ." (§ 654.3.) To the extent Victor is arguing that, even if probation had no prepetition duty to investigate informal supervision, the trial court abused its discretion by failing to order probation to submit a more detailed report prior the section 654.2 ruling, he forfeited the argument. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 880 ["a criminal defendant who does not challenge an assertedly erroneous ruling of the trial court in that court has forfeited his or her right to raise the claim on appeal"]; *In re M.V.* (2014) 225 Cal.App.4th 1495, 1508 ["courts have repeatedly held that a party's failure to object forfeits appellate review of the adequacy of—or the failure to prepare—mandatory assessment reports in juvenile proceedings"]; *In re Dakota H.* (2005) 132 Cal.App.4th 212, 221 ["[a] party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court"].)

---

the juvenile court shall be commenced. If the probation officer determines that it is appropriate to offer services to the family to prevent or eliminate the need for removal of the minor from his or her home, the probation officer shall make a referral to those services." (§ 653.5, subd. (a).) "Notwithstanding subdivision (b), the probation officer shall cause the affidavit to be taken within 48 hours to the prosecuting attorney in all of the following cases: [¶] . . . [¶] If it appears to the probation officer that the minor was 14 years of age or older at the date of the offense and that the offense constitutes a felony referral to the probation officer. [¶] . . . [¶] However, if it appears to the prosecuting attorney that the affidavit was not properly referred, that the offense for which the minor was referred should be charged as a misdemeanor, or that the minor may benefit from a program of informal supervision, he or she shall refer the matter to the probation officer for whatever action the probation officer may deem appropriate." (§ 653.5, subd. (c)(3).)

17

We are mindful that "Section 654 and [California Rules of Court, rule 5.516] unequivocally require the probation officer to conduct an independent and careful review of circumstances peculiar to each case in order to determine whether a particular accused juvenile would be a suitable candidate for informal probation. [Citation.] The requirement that each juvenile offender receive treatment as an individual is not satisfied by an administrative policy of rejecting application for informal probation upon the sole basis of the juvenile's offense." (*Mark F. v. Superior Court* (1987) 189 Cal.App.3d 206, 209–210.) The record makes clear that the probation officer considered Victor's individual circumstances, reported his recommendation to the juvenile court, and did not base that recommendation solely on the nature of Victor's offense. If the probation officer's report and recommendation was inadequate, the issue should have been raised before the juvenile court when it could have been remedied. Instead, Victor's counsel did not object to the brevity or informality of the probation officer's oral report and urged the juvenile court to "go forward."

### III. DISPOSITION

The part of the juvenile court's jurisdictional order sustaining the charges that Victor violated Penal Code section 148, subdivision (a), is affirmed, and that part of the order sustaining the charge of carrying a concealed dirk or dagger, in violation of Penal Code section 21310, is reversed. The disposition order is vacated and the matter is remanded to the juvenile court for a new disposition hearing.

_____
BRUINIERS, J.

WE CONCUR:

_____
SIMONS, Acting P. J.

_____
NEEDHAM, J.