Filed 12/9/15  P. v. Miao CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ZHUANG MIAO,<br><br>        Defendant and Appellant. | A143012<br><br>(San Mateo County<br>Super. Ct. No. SC080659A) |

Zhuang Miao appeals from a judgment convicting her of abduction for the purpose of prostitution based on a plea of no contest and placing her on probation for three years. The plea was entered after the denial of her motion to suppress evidence obtained following what she contends to have been an illegal detention and a search of the content of her iPad without her consent.  If her interaction with the police became a detention, as she contends, we conclude that the detention was justified by reasonable suspicion.  We also conclude that defendant voluntarily consented to the search of her car in which her iPad was found.  However, neither as a search incident to a lawful detention nor as a search to which she consented did the police have the right to open and view the contents of her iPad, which yielded much of the evidence she sought to suppress.  Because the illegal search produced incriminating  evidence that should have been suppressed, we must reverse.

**Background**

The essentially undisputed facts established at the hearing on the motion to dismiss are as follows.

1

At approximately 1:07 a.m. on September 30, 2013, Officer Wilfredo Herrera was dispatched to the Quality Inn & Suites Hotel in South San Francisco. He was the first officer on the scene at approximately 1:11 a.m. Herrera was dispatched to the hotel based on a call from a reporting party believed to be the night agent at the hotel. The reporting party stated he believed that there was possible prostitution activity at the hotel because a gray Hyundai arrived at the hotel at approximately 12:30 a.m., and dropped off two females.

When Herrera arrived at the hotel, he saw a gray Hyundai in the parking lot with a male in the driver's seat and a female, identified as defendant, sitting in the back seat behind the driver. Herrera parked his police vehicle in a manner as to not block the gray Hyundai. He exited his vehicle and approached the Hyundai. He did not activate his vehicle's emergency lights or spotlights.

Herrera approached the driver's side window and looked in the vehicle using his flashlight. He attempted to speak with the driver, but he spoke only Chinese. Herrera then spoke with defendant, who spoke English. He asked defendant whether she was staying at the hotel and she said she was not. Herrera then asked defendant and the driver for their identification and both promptly gave them to the officer.

Immediately after Herrera had obtained the identifications, he noticed an Asian female, dressed in a manner consistent with that of a prostitute, exiting the hotel. When she saw Herrera, she immediately went back into the hotel.

Herrera did a positive records check of defendant and the driver over his patrol radio at approximately 1:15 a.m. Immediately after running the names, he saw another female, also dressed in provocative clothing, exit the hotel. When she saw Herrera speaking to defendant and the driver, she walked in the opposite direction. Herrera walked toward her and asked her to "hold on a second." At the same time, a second officer arrived on the scene and Herrera asked him to speak to the female suspect.

Herrera went inside the hotel to look for the female he had seen return there. He found her in the lobby. She did not speak English, so he gestured for her to follow him outside. A third officer had arrived on the scene, who he asked to stay with that female.

2

Herrera then returned to the car.  He asked the driver to come out of the car, obtained his consent to search his person, which he did and found nothing suspicious.  Herrera then asked defendant whether she was related to the driver and she told him that he was just a friend.  The officer asked whose car it was and defendant answered that it belonged to her.  Herrera then asked her, "Is it okay if I take a look in your car? I'm looking for guns, knives, anything dangerous," to which defendant responded, "Go ahead."

Herrera then proceeded to search the car. He found eight cell phones and a green zipper pouch with a lot of money on the rear passenger seat.  There was also an iPad on that seat, labeled "Zhuang Miao's iPad."  Herrera testified that he "pressed the button, slid the screen, and it was immediately opened up to a Gmail account."  No images appeared but he then found applications on the iPad that he recognized as adult websites which he believed to be tools to solicit prostitution.  One of the sites had an advertisement with a phone number that matched one of the cell phones found in the car.  That site advertised, "Two Asian Beauties will rock your world."  Other officers Google searched that phone number on their own cell phones and found that the number appeared on advertisements for myRedbook, one of the claimed prostitution services.  Defendant told Herrera that the number was her business phone number.  Herrera then searched the trunk of the vehicle, where he found a black plastic garbage bag that contained over 100 new condoms.

Defendant told Herrera that she was waiting for the two provocatively dressed female suspects from the hotel, but denied that they were prostitutes.  Defendant told him that she worked with approximately six clients, who did not speak English.  She helped them post advertisements on the websites Herrera had seen on her iPad.  Defendant explained that the number of phones was due to the number of clients she worked with.  She received $40 per client.

Herrera arrested defendant at approximately 2:19 a.m.

Defendant was initially charged with two counts of deriving earnings from another person's act of prostitution (Pen. Code, § 266h, subd. (a)).[1] She filed a motion pursuant to section 1538.5 seeking to suppress all objects found in the vehicle and, in addition, "[a]ny and all writings printed or copied or memorialized in any way from defendant Miao's Cell Phone, Computer, iPad or any other electronic device seized by the police from the defendant Zhuang Miao." After receiving testimony and argument, the court denied the motion with the following explanation: "The term 'consent' is a term of art. The officer testified that he asked whether he could search the car. He didn't say whether I can have your consent to search the car. He asked the question, she said yes, and then the last consent, but the term 'consent' isn't anything that was hoisted on your client. So the fact that she doesn't know what 'consent' means is really not relevant. And I find that there was sufficient cause to proceed based on the evidence that I've heard and the motion is denied."

Following denial of her motion to suppress defendant pled no contest to an amended charge of procuring a person for the purpose of prostitution by force or false inducement (§ 266a). Pursuant to the plea agreement, she was placed on probation for three years, with a 90-day term in county jail or the Sheriff's Work Program. She timely filed a notice of appeal, challenging the denial of her motion to suppress.

**Discussion**

1. *If defendant was detained, the detention was justified by the officer's reasonable suspicion that defendant was then engaged in unlawful activity.*

Defendant contends that she was detained "at the time that Officer Herrera approached her car" or at least when the officer obtained and temporarily retained her identification. We do not necessarily agree that either of those circumstances, or any of the surrounding circumstances up to that point in time, gave rise to a detention. (See, e.g., *People v. Cartwright* (1999) 72 Cal.App.4th 1362, 1370-1372.) However, even assuming there was a detention, the officer unquestionably was aware of sufficient facts

---

[1] All statutory references are to the Penal Code.

4

suggesting that defendant was engaged in unlawful activity to justify the detention. The officer was aware of the recent report, apparently from the desk clerk, that persons in a gray Hyundai had dropped off two women at the hotel that the caller believed were engaged in prostitution. Defendant was found in a car matching the caller's description and acknowledged that she was not a guest of the hotel. Momentarily, two women, both dressed in clothing customarily worn by prostitutes, exited the hotel and approached the car until they observed the officer and then immediately turned and walked in the other direction. These facts supported the reasonable suspicion that defendant was involved in facilitating illegal prostitution by the two women, and justified a detention to investigate further. (*People v. Souza* (1994) 9 Cal.4th 224, 230; *People v. Pitts* (2004) 117 Cal.App.4th 881, 885.) Unlike the situation in *Pitts,* on which defendant relies, the facts known to Herrera—including his personal observation of the two apparent prostitutes returning to defendant's car and retreating when they noticed the police officer—was sufficient "in its individual parts and sum total to constitute the requisite amount of specific and articulable facts to justify [the] detention." (*Pitts*, p. 889.)

2. *Defendant voluntarily consented to the search of her car but not to the search of her iPad.*

Defendant does not dispute that if she was not unlawfully detained, her consent to the search of her car authorized the search that produced, among other evidence, the several telephones and money pouch found on the back seat and the condoms found in the trunk of the vehicle. Therefore, insofar as the motion to suppress was directed to those items, the motion was properly denied. (E.g., *People v. Brown* (1998) 62 Cal.App.4th 493, 499-500.)

Defendant's voluntary consent to the search of her car also removes any basis to suppress the iPad found on the back seat of the car. However, the fact that defendant consented to the search of the car, in which the iPad was located, does not mean that she consented to the officer opening the iPad and viewing its contents. To the contrary, defendant told Herrera to "go ahead" and search the car after the officer told her he was "looking for guns, knives, anything dangerous." Her consent given in response to that

5

request cannot reasonably by construed as permission to open her iPad and view the data that she maintained on the electronic device. " 'A consensual search may not legally exceed the scope of the consent supporting it.' " (*People v. Cantor* (2007) 149 Cal.App.4th 961, 965.) The prosecution bears the burden of proving that the officer's warrantless search was within the scope of defendant's consent—that " 'the typical reasonable person [would] have understood by the exchange between the officer and the suspect' " that the consent extended to the object searched. (*Ibid.*) Although an appellate court will uphold the trial court's determination unless clearly erroneous, as in *Cantor,* "[t]he trial court [here] erred as a matter of law by failing to recognize the limited scope of defendant's consent." (*Ibid.;* see also, e.g*., United States v. Dichiarinte* (7th Cir. 1971) 445 F.2d 126.) Insofar as defendant's motion sought to suppress all information obtained from opening and viewing the digital data stored on defendant's iPad, and the evidence obtained as the result of that search (*Wong Sun v. United States* (1963) 371 U.S. 471), the motion should have been granted.

The United States Supreme Court has now held that a warrantless search incident to an arrest does not permit a search of the digital contents of a cell phone seized incident to the arrest, and the decision undoubtedly extends to the contents of other electronic devices such as an iPad. (*Riley v. California* (2014) ___U.S. __ [134 S.Ct. 2473].) At the time of the events in question in the present case, *Riley* had not yet been decided, and the California Supreme Court had reached a contrary conclusion in *People v. Diaz* (2011) 51 Cal.4th 84. The Attorney General recognizes that *Riley* applies retroactively (*People v. Cage* (2007) 40 Cal.4th 965, 974, fn. 4) but argues that the decision is inapplicable here because the search of the iPad was a valid consensual search, a contention that we have just rejected. The Attorney General also contends that "if the court were to find that *Riley* would make the search of the iPad improper, the exclusionary rule should not be applied because of the good faith exception to the Fourth Amendment requirement of a warrant." However, our conclusion that the search of the digital content of the iPad was unlawful does not rest on the decision in *Riley*. The search of defendant's iPad occurred prior to defendant's arrest. No attempt was made by the arresting officer, the prosecutor

6

or the trial court to justify the search of the iPad as incident to either an arrest or a lawful detention. As just indicated, the Attorney General herself argues that the search was authorized by defendant's consent but, as we have held, the search of the digital content of the iPad exceeded the scope of defendant's consent. The good faith exception does not apply.

Thus, we conclude that the trial court erred in denying the suppression motion insofar as the motion sought to suppress evidence of the information Herrera observed when he activated defendant's iPad, testimony concerning the correlation of that information with the phone numbers of the cell phones found in defendant's car, and testimony of statements made by defendant when confronted with that information. Since defendant entered her no contest plea following the denial of the motion to suppress, her conviction must be reversed and the matter remanded to give defendant the opportunity to withdraw her plea if she so elects. (*People v. Hill* (1974) 12 Cal.3d 731, 767-770.)[2]

3. *Probation conditions*

Defendant also challenges two of the conditions of her probation. Although we are reversing the judgment, we address these challenges to resolve the issues in the event that defendant does not elect to withdraw her no contest plea or that the same terms are imposed following a conviction should she proceed to trial.

First, defendant challenges the condition appearing in the trial court minutes that she "not associate with minors under the age of 18, nor frequent places where minors congregate unless in the presence of a responsible adult approved by the probation department." The court did not include this condition in its oral pronouncement at

---

[2] *People v. Hill* holds that in these circumstances the harmless error rule does not apply. In *People v. Salazar* (1979) 93 Cal.App.3d 912 the Court of Appeal held that harmless error may apply if it is inconceivable that that a guilty plea would not have been entered absent the erroneous denial of a suppression motion. In the present case we cannot say with any degree of confidence whether defendant would have entered her plea if the suppression motion had been granted with respect to the iPad data and the fruit of that illegal search.

7

sentencing, for which reason the Attorney General acknowledges that the condition in the minute order must be reversed. (*People v. Pirali* (2013) 217 Cal.App.4th 1341, 1345-1346.) We concur, but add that in so doing we do not pass on the propriety of the terms of the condition should such a condition be properly imposed.

Second, defendant challenges the condition that she "not . . . possess any dangerous or deadly weapons, including firearms and ammunition." She contends that without an express knowledge requirement the condition is unconstitutionally vague, and that the condition should be modified to include such an express condition. This issue is now pending before our Supreme Court. (*People v. Hall*, review granted Sept. 9, 2015, No. S227193.) In our view the condition imposed on defendant in this case does not suffer from the same uncertainties that led our colleagues in Division Four to require the inclusion of the term "knowingly" in the probation condition that the defendant " 'Not knowingly possess weapons of any kind, which means no guns, knives, clubs, brass knuckles, attack dogs, ammunition, or something that looks like a weapon. In addition, you are not to knowingly possess anything that you intend to use as a weapon or that you know someone else might consider to be a weapon.' " (*In re Kevin F.* (2015) 239 Cal.App.4th 351, 366.) Nonetheless, since the matter must in all events be remanded, and pending a decision from the Supreme Court in *Hall,* it would be prudent to insert the term "knowingly" in the challenged condition.

## Disposition

The judgment is reversed and the matter remanded for further proceedings consistent with this opinion.

_____
Pollak, Acting P.J.

We concur:

_____
Siggins, J.

_____
Jenkins, J.

A143012

9